# SUPREME COURT OF THE UNITED STATES

JOHN Q. HAMM, COMMISSIONER, ALABAMA
DEPARTMENT OF CORRECTIONS
*v.* KENNETH EUGENE SMITH

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 22–580.   Decided May 15, 2023

The petition for a writ of certiorari is denied.

JUSTICE THOMAS, with whom JUSTICE ALITO joins, dissenting from the denial of certiorari.

In 1988, Kenneth Eugene Smith and an accomplice murdered Elizabeth Sennett for $1,000 apiece. The State of Alabama sentenced Smith to death. Last year, it scheduled Smith's execution for November 17, 2022, and Smith brought an Eighth Amendment challenge to the State's plan to execute him by lethal injection. On the afternoon of November 17, a divided Eleventh Circuit panel held that Smith had pleaded a viable method-of-execution claim, reversing the District Court's contrary ruling. Later that evening, the Eleventh Circuit granted Smith a stay of execution. The State applied to this Court to dissolve the Eleventh Circuit's stay, and we granted the application. But, after this last-minute litigation, the State was unable to execute Smith before its death warrant expired. Smith's lawsuit thus remains pending in the District Court.

In this petition, the State now asks this Court to summarily reverse the Eleventh Circuit's holding that Smith pleaded a viable Eighth Amendment claim. I would do so. The judgment below rests on flawed Circuit precedent that is irreconcilable with our method-of-execution case law.

"The Constitution allows capital punishment" and "does not guarantee a prisoner a painless death." *Bucklew* v. *Precythe*, 587 U. S. ___, ___, ___ (2019) (slip op., at 8, 12).

Nonetheless, in defined circumstances, our cases countenance a claim that "the State's chosen method of execution cruelly superadds pain to the death sentence," thus violating the Eighth Amendment. *Id.*, at ___ (slip op., at 13). To plead and prove such a claim, "a prisoner must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason." *Ibid.* Only with such a showing can "a State's refusal to change its method . . . be viewed as 'cruel and unusual' under the Eighth Amendment." *Baze* v. *Rees*, 553 U. S. 35, 52 (2008) (plurality opinion).

Our cases further provide guidance on what a prisoner must show to prove that his proposed alternative method is "feasible and readily implemented." In *Bucklew*, we explained that "the inmate's proposal must be sufficiently detailed to permit a finding that the State could carry it out relatively easily and reasonably quickly." 587 U. S., at ___ (slip op., at 21) (internal quotation marks omitted). And, just last Term, the Court underscored that the prisoner "must make the case that the State really can put him to death, though in a different way than it plans," by "providing the State with a veritable blueprint for carrying the death sentence out." *Nance* v. *Ward*, 597 U. S. ___, ___ (2022) (slip op., at 8); see also *ibid.* ("If the inmate obtains his requested relief, it is because he has persuaded a court that the State could readily use his proposal to execute him").

These precedents unmistakably establish two propositions. First, it is *the prisoner's* burden to "plead and prove a known and available alternative." *Glossip* v. *Gross*, 576 U. S. 863, 880 (2015). Second, the focus of the "feasible and readily implemented" element is *practical* availability, which is ultimately a question of fact. See *Nance*, 597 U. S., at ___ (slip op., at 8); *Bucklew*, 587 U. S., at ___ (slip op., at 21).

Here, Smith challenged the State's chosen method of lethal injection based on the proposed alternative of execution by nitrogen hypoxia. As the plaintiff, Smith was required to "plea[d] factual content" making it plausible that he could establish the availability element of his claim. *Ashcroft* v. *Iqbal*, 556 U. S. 662, 678 (2009); see Fed. Rule Civ. Proc. 8(a). Smith, however, did not even *attempt* to plead facts indicating that Alabama "could readily use [nitrogen hypoxia] to execute him." *Nance*, 597 U. S., at \_\_\_ (slip op., at 8). Instead, he alleged only that, *"[a]s a matter of law*, nitrogen hypoxia is an available and feasible alternative method of execution," citing *Price* v. *Commissioner, Ala. Dept. of Corrections*, 920 F. 3d 1317, 1328–1329 (CA11 2019), as support. Motion To Alter or Amend Judgt. in No. 2:22–cv–00497 (MD Ala., Oct. 19, 2022), ECF Doc. 24–1, Exh. A, p. 19, ¶74 (emphasis added). And the Eleventh Circuit considered this threadbare allegation sufficient to satisfy Smith's pleading burden on the availability element.

Understanding the court's reasoning below requires some background about Alabama law and the Eleventh Circuit's *Price* decision. In 2018, Alabama enacted a statute authorizing execution by nitrogen hypoxia for inmates who elected that method within 30 days of their sentences becoming final or, for those whose sentences were already final before June 1, 2018, within 30 days of that date. Ala. Code §15–18–82.1(b)(2). (Smith did not elect nitrogen hypoxia, so lethal injection remains the only method of execution authorized by state law in his case. §15–18–82.1(a).) Nearly five years later, Alabama has yet to carry out any execution by nitrogen hypoxia or to finalize a protocol for implementing that method—which "ha[s] never been used to carry out an execution and ha[s] no track record of successful use" in any jurisdiction. *Bucklew*, 587 U. S., at \_\_\_ (slip op., at 22) (internal quotation marks omitted).

Since *Price*, however, the Eleventh Circuit has treated the existence of this Alabama statute as relieving inmates

like Smith of their burden to plead and prove that nitrogen
hypoxia is feasible and readily implemented in fact. "If a
State adopts a particular method of execution," *Price* rea-
soned, "it thereby concedes that the method of execution is
available to its inmates." 920 F. 3d, at 1327–1328. Thus,
"an inmate may satisfy his burden to demonstrate that [a]
method of execution is feasible and readily implemented by"
simply "pointing to the executing state's official adoption of
that method of execution." *Id.*, at 1328. Here, that is ex-
actly what Smith did, and the Eleventh Circuit, applying
*Price*, held that nothing more was required.

However, *Price*'s reasoning rests on a fundamental mis-
understanding of the inquiry marked out by *Baze*, *Glossip*,
and *Bucklew*. Those cases set forth the circumstances in
which a State's use of one method of execution, rather than
an identified " 'known and available alternative,' " consti-
tutes cruel and unusual punishment under the Eighth
Amendment. *Bucklew*, 587 U. S., at ___ (slip op., at 13)
(quoting *Glossip*, 576 U. S., at 878); see *Baze*, 553 U. S., at
52. The gravamen of the constitutional wrong is the State's
unjustified "refus[al] to adopt" that proffered alternative
despite its "documented advantages," including its ready
availability. *Ibid.* Accordingly, whether the State has au-
thorized the proffered alternative as a matter of state stat-
utory law has no relevance to the plaintiff's burden of show-
ing a constitutional violation. *Bucklew* has already
explained why: "[T]he Eighth Amendment is the supreme
law of the land, and the comparative assessment it requires
can't be controlled by the State's choice of which methods to
authorize in its statutes." 587 U. S., at ___–___ (slip op., at
19–20).

The *Bucklew* Court made that statement in the context of
explaining that "[a]n inmate seeking to identify an alterna-
tive method of execution is not limited to choosing among
those presently authorized by a particular State's law," *id.*,
at ___ (slip op., at 19), but the underlying logic cuts both

ways. See *Heffernan* v. *City of Paterson*, 578 U. S. 266, 272 (2016) ("[I]n the law, what is sauce for the goose is normally sauce for the gander"). When the question is whether the Eighth Amendment requires a State to replace its chosen method with an alternative method in executing the plaintiff, it is simply irrelevant, without more, that the State's statutes authorize the use of the alternative method in *other* executions that are to take place sometime in the indefinite future. Here, Smith alleged only that, and nothing more. He therefore failed to state a claim, and the Eleventh Circuit erred by holding otherwise.

The Eleventh Circuit's error is not only plain but also serious enough to warrant correction. Even if "the burden of the alternative-method requirement 'can be overstated,'" *Bucklew*, 587 U. S., at \_\_\_ (KAVANAUGH, J., concurring) (slip op., at 1), it remains an essential element of an Eighth Amendment method-of-execution claim, and it must be appropriately policed lest it become an instrument of dilatory litigation tactics. The comparative analysis set forth in *Baze*, *Glossip*, and *Bucklew* contains an inherent risk of incentivizing "an inmate intent on dragging out litigation . . . to identify only a method of execution on the boundary of what's practically available to the state." *Middlebrooks* v. *Parker*, 22 F. 4th 621, 625 (CA6 2022) (Thapar, J., statement respecting denial of rehearing en banc). The Eleventh Circuit's approach of treating any statutorily authorized method as available as a matter of law—even an entirely novel method that may not be readily implementable in reality—only heightens that danger. In turn, and as a result, it "perversely incentivize[s] States to delay or even refrain from approving even the most humane methods of execution" any earlier than the moment they are prepared to put them into practice. *Price* v. *Dunn*, 587 U. S. \_\_\_, \_\_\_ (2019) (THOMAS, J., concurring in denial of certiorari) (slip op., at 11).

The Eleventh Circuit's flawed logic in *Price* has already

forced us to intervene in one last-minute capital emergency. This petition offered an opportunity, which may well prove unique, to consider and correct *Price*'s faulty reasoning outside of that posture.  Because the Court declines that opportunity, I respectfully dissent.